UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARLOS RUIZ,<br><br>    Plaintiff<br><br>v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, et. al.,<br><br>    Defendants | Case No.: 3:17-cv-00643-RCJ -WGC<br><br>**Report & Recommendation of United States Magistrate Judge**<br><br>Re: ECF No. 129 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 129, 129-1 to 129-8, 131-1 to 131-5.) Plaintiff filed a response. (ECF Nos. 136, 137.) Defendants filed a reply. (ECF No. 138.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No.5 .) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*)

The court screened Plaintiff's Amended Complaint, and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against defendants

Dr. Romeo Aranas, Dr. Kim Adamson, and Nurse Katherine Hegge. (ECF No. 6.) Plaintiff alleges that since 2016, Defendants have failed to sufficiently treat his back pain. He contends that his back brace was taken away, and a follow up appointment was delayed for six to eight months, and that ibuprofen was withheld from him for over five months. He avers that he suffered from limited mobility, trouble standing for long periods of time, fatigue, and numbness and pain.

Defendants move for summary judgment, arguing: (1) there was no violation of the Eighth Amendment; (2) defendants Dr. Aranas and Hegge did not personally participate in the alleged constitutional violation in responding to Plaintiff's grievances; and (3) they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Standard**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698

F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

1  quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a
2  prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.
3        "A difference of opinion between a physician and the prisoner—or between medical
4  professionals—concerning what medical care is appropriate does not amount to deliberate
5  indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).
6  Instead, to establish deliberate indifference in the context of a difference of opinion between a
7  physician and the prisoner or between medical providers, the prisoner "'must show that the
8  course of treatment the doctors chose was medically unacceptable under the circumstances' and
9  that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's
10 health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**B. Medical Evidence**

      When Plaintiff was seen on February 2, 2016, he had complaints of lower back pain, leg pain and SI joint pain. He was assessed with SI myofascitis. (ECF No. 131-2 at 3; ECF No. 136 at 42.) That day, he was ordered an elastic back support for one month, and analgesic balm. (ECF No. 131-3 at 4; ECF No. 131-1 at 2.) A record from May 24, 2016, indicates that he was ordered Analgesic balm as well as Excedrin Migraine. (ECF No. 131-3 at 4.) He sent a kite to refill the analgesic balm, and other medications on November 30, 2016. (ECF No. 129-3 at 2.)

      On December 6, 2016, there is a notation that Plaintiff brought in his back support and asked for a replacement. The order for the brace had expired and it was returned. Plaintiff was instructed to kite for a medical appointment if needed. (ECF No. 131-2 at 3.)

      On December 15, 2016, Plaintiff filed a kite stating that he needed an appointment for renewal of his back brace and medications. While the kite is dated December 15, 2016, the

response states that he was seen by a doctor on June 1, 2017, roughly six months later. (ECF No. 129-2 at 2; ECF No. 136 at 44.)

Plaintiff filed a second kite on December 29, 2016, stating that he had previously submitted a kite for an appointment, and was still in pain. He asked for a cortisone shot and to have his back brace returned. The response states that he had an appointment pending. (ECF No. 129-2 at 3; ECF No. 129-3 at 4.)

At the end of January of 2017, Plaintiff filed an informal level grievance, asserting that his back brace had been taken and he had been instructed to request an appointment to get another back brace, which he did, to no avail. He complained that he was suffering in pain. (ECF No. 129-1 at 14.) R. Donnelly, who is not a defendant, responded to the informal level grievance. The transaction date of the response is February 28, 2017. Donnelly said that they had not received a kite request for an appointment, and instructed Plaintiff to kite to see the doctor. (ECF No. 129-1 at 8.)

On March 7, 2017, Plaintiff filed another kite, stating that his back brace had been taken, and it helped him cope with constant back pain. He said that he had submitted a kite on this issue, but it was ignored by medical. The response states that he had an appointment pending from the kite dated December 15, 2016. (ECF No. 129-1 at 10; ECF No. 129-3 at 8.)

Also on March 7, 2017, Plaintiff filed his first level grievance, stating he had submitted a kite about his back brace in December of 2016. He reiterated that he had been in tremendous pain, and had not been given any medication. Defendant Hegge responded to the first level grievance. While the grievance was filed on March 7, 2017, the response has a transaction date of June 1, 2017. Hegge told Plaintiff that he would be scheduled in the near future to discuss the request for a new back brace. (ECF No. 129-1 at 5-7.)

It appears Plaintiff was seen by Dr. Adamson on June 1, 2017, and there is a notation that he wanted a back brace. (ECF No. 131-2 at 3.) Medications were ordered that day, including 800 mg ibuprofen, analgesic balm and Excedrin Migraine. (ECF No. 13103 at 3.)

On July 13, 2017, Plaintiff filed his second level grievance, stating that he was seen in June, and he was still requesting the return of his back brace. Dr. Aranas responded to the second level grievance, stating that Plaintiff had been seen on June 1, 2017, but the doctor did not issue a new brace at that time. Dr. Aranas instructed Plaintiff that if his symptoms worsened, or if he wanted to discuss referral to an orthopedist, he should kite and request an appointment with the doctor who would make the referral or other recommendations. (ECF No. 129-1 at 2.)

Plaintiff filed his complaint on October 24, 2017. (ECF No. 1-1.)

On June 18, 2018, Plaintiff was ordered medications, including 800 mg ibuprofen, analgesic balm, and Excedrin Migraine. (ECF No. 131-3 at 3.)

Plaintiff saw Dr. Adamson on June 20, 2018. Dr. Adamson's notes state that Plaintiff was seen regarding his grievance. A back brace and TED hose were issued for a year and medications were ordered. (ECF No. 131-2 at 3; ECF No. 136 at 42; ECF No. 136 at 47.)

Plaintiff apparently saw Dr. Adamson again the next day, June 21, 2018, regarding pain in his finger, wrist, knee and foot. Dr. Adamson's notes state that when an x-ray was suggested to evaluate Plaintiff's bone condition, Plaintiff refused treatment. Dr. Adamson stated that he was suspicious of malingering and manipulating staff to get medication. (ECF No. 131-2 at 2; ECF No. 136 at 48.)

Plaintiff filed his Amended Complaint on November 15, 2018. (ECF No. 5.) The court issued its order screening the Amended Complaint on January 14, 2019. (ECF No. 6.)

Plaintiff next saw Dr. Adamson on August 29, 2019, for lumbar spine and neck pain. Plaintiff's cervical spine was stiff, and there was decreased rotation and extension. He had palpable muscle tension in his lumbar spine. He had point tenderness at each posterior SI joint. He was assessed with bilateral sacroiliitis with compensatory cervical tilt. He was prescribed Indocin and analgesic balm, and his bilateral posterior SI joints were injected. (ECF No. 136 at 51.)

Plaintiff saw Dr. Adamson on September 24, 2019. Plaintiff complained of back pain and was wearing a back brace. He also had issues with his knee and foot. He had severe muscle spasm in the cervical and lumbar paraspinal muscles. Dr. Adamson recommended either a shoe orthotic to correct genu valgum or possible meniscus tear repair to correct the knock knees and short leg. The plan was to see Ortho Pro for a shoe insert and to have an orthopedic consult for a possible meniscus tear, and continue using Indocin, the knee sleeve and back brace. (ECF No. 136 at 51.)

On October 27, 2019, Plaintiff sent a kite about the status of the Ortho Pro visit, and was told it was not approved until more information could be obtained. (ECF No. 136 at 53.)

On January 20, 2021, Plaintiff saw orthopedist Dr. Marco Mendoza for chronic neck and back pain. Plaintiff reported that the back brace and Indomethacin helped with his pain. On examination, he had tenderness with palpitation over the paraspinous muscles of the lumbar spine. He was assessed with chronic neck pain and spasm, cervical radiculopathy, chronic low back pain and lumbar radiculopathy. Dr. Mendoza recommended trying conservative management, as well as a muscle relaxer. If his symptoms continued, it was recommended that an MRI be considered. (ECF No. 136 at 57-60.)

1        Dr. Marks apparently took over Plaintiff's care from Dr. Adamson at NDOC. On
2 January 29, 2021, Dr. Marks noted that Plaintiff had osteoarthritis, and recommended lifestyle
3 modifications and weight loss to slow progression of the disease. Dr. Marks said that Plaintiff's
4 chronic cervical, lumbar and right knee pain started in approximately 2014, but may have caused
5 pain as far back as 2008. In 2014, his treatment consisted of Non-Steroidal Anti-Inflammatory
6 Drugs (NSAIDs), steroid injections, a knee brace, a lumbar support brace, and topical analgesic
7 balm. X-rays in 2014 showed mild degenerative changes of the cervical spine and a normal
8 lumbar spine. In 2019, Dr. Adamson ordered a stronger NSAID, Indomethacin (Indocin). 2019
9 x-rays showed moderate degenerative changes in the cervical spine, and mild degenerative
10 changes in the lumbar spine. (ECF No. 136 at 55.)
11        Plaintiff had an MRI of the lumbar spine on May 14, 2021. There was minimal posterior
12 disc bulging without spinal stenosis or foraminal narrowing at L3-L4 and L5-S1, and mild
13 posterior disc bulging without spinal stenosis or foraminal narrowing at L4-L5. (ECF No. 131-4
14 at 2.)
15        Plaintiff saw Dr. Mendoza for a follow up after his MRI on May 26, 2021. Plaintiff
16 reported numbness in the right leg with occasional spasm. He was assessed with chronic back
17 pain. Given the relatively benign MRI, Dr. Mendoza did not recommend any further intervention
18 and was instructed to follow up as needed. (ECF No. 131-5 at 2-4.)
19 **C. Analysis**
20        First, Defendants argue that Plaintiff does not suffer from a serious medical need. Serious
21 medical needs include medical conditions that include chronic and substantial pain. Dr. Marks,
22 who succeeded Dr. Adamson as Plaintiff's treating physician, admits that Plaintiff suffered from
23 chronic back pain since 2014, and possibly even since 2008. He has received treatment over the

years for that condition including anti-inflammatory medications, steroid injections, a brace and analgesic balm. (ECF No. 136 at 55.) This is evidence that Plaintiff does in fact suffer from a serious medical need.

Next, the court will address the subjective prong of the Eighth Amendment inquiry as to each defendant.

**1. Dr. Adamson**

Plaintiff had an order for a back brace for one month beginning in February of 2016. Ten months later, he still had the brace, and according to Plaintiff, asked to switch it out for a larger size because of weight gain. The order had expired and so the brace was taken from him and he was instructed to kite for an appointment. He did so. He sent two kites in December of 2016, asking for an appointment to see a doctor about his back and the brace, and stressed that he was in pain. He got no response, so he filed an informal level grievance at the end of January 2017. Donnelly, who is not a defendant, responded a month later, and told Plaintiff to kite for an appointment even though he had already done so twice. Shortly after receiving her response, Plaintiff filed another kite and his first level grievance, on March 7, 2017. Hegge did not respond until June 1, 2017, and Plaintiff saw Dr. Adamson on June 1, 2017.

According to Dr. Adamson, he did not feel the brace was medically necessary at the June 1, 2017 appointment, and so did not prescribe one. (Adamson Decl., ECF129-5 ¶ 8.)

Plaintiff saw Dr. Adamson again on June 20, 2018. The record states that Plaintiff was seen as a result of his grievance, and a back brace and TED hose were issued for a year. Dr. Adamson does not mention this visit in his declaration. Nor does he explain why Plaintiff was issued a back brace at that time, when Dr. Adamson had denied Plaintiff's request for the brace a

year earlier. Nor does Dr. Adamson explain the delay in seeing Plaintiff from when he kited about his pain and the back brace in December of 2016, and when he eventually saw Plaintiff on June 1, 2017. The December 2016 kite and the March 7, 2017 both stated that Plaintiff was in pain. In the March 7, 2017 kite, Plaintiff specifically said that the back brace had helped him cope with constant pain. In addition, it appears that up until the June 1, 2017 appointment, Plaintiff had only received analgesic balm, but still complained that he was in pain. After the June 1, 2017 appointment, Dr. Adamson prescribed 800 mg ibuprofen. There is at least a dispute of fact as to whether Plaintiff was harmed as a result of the delay in seeing Plaintiff and prescribing him additional pain medication.

While Defendants characterize Dr. Adamson's decision not to order a back brace in June of 2017 as a difference of opinion regarding the course of treatment, Plaintiff has raised a genuine dispute of material fact as to whether that decision was made in disregard to Plaintiff's health. Plaintiff's kites and grievance indicated he was in pain. Moreover, Dr. Adamson inexplicably reversed course a year later and prescribed Plaintiff the back brace for a year.

Therefore, summary judgment should be denied as to Dr. Adamson.

**2. Hegge**

Hegge provides a declaration that she did not recall having any direct interaction with Plaintiff and did not examine him. She responded to his grievance. She says that she told him he needed to submit a kite for an appointment so a physician could evaluate him for a new brace. She could not order a brace on her own authority. (Hegge Decl., ECF No. 129-4.)

Plaintiff's first level grievance is dated March 7, 2017. Plaintiff explained that he had in fact sent kites asking for an appointment about the back brace, and had been in "tremendous pain" since his brace was taken from him and did not have any medication for his pain. (ECF No.

129-1 at 5, 7.) The transaction date on Hegge's response is June 1, 2017, roughly three months after Plaintiff submitted his informal level grievance. Hegge advised Plaintiff he would be scheduled to discuss his request for a back brace. (ECF No. 129-1 at 6.)

Hegge does not explain the three-month delay in responding to the grievance. Advising Plaintiff that he was scheduled to see the provider to discuss his request for a brace might not constitute deliberate indifference if Hegge had promptly responded to the grievance; however, Hegge did not respond for three months, after Plaintiff had notified her that he was in "tremendous pain." A fact finder could conclude that this delay constitutes deliberate indifference.

Therefore, summary judgment should be denied as to Hegge.

**3. Dr. Aranas**

Plaintiff submitted his second level grievance on July 13, 2017. Plaintiff noted that he was seen in June and the issue was discussed, but still asked for the return of his back brace or for surgery. (ECF No. 129-1 at 4.) Dr. Aranas responded that Plaintiff sent a kite and was seen on June 1, 2017, and the doctor did not issue a new brace at that time. Dr. Aranas advised Plaintiff that if his symptoms worsen or if he wanted to discuss referral to an orthopedist, he should kite to request an appointment with the doctor, who would make the referral or other recommendations for Plaintiff's condition. (ECF No. 129-1 at 2.)

Unlike the situation with Hegge, by the time Plaintiff sent his second level grievance, Plaintiff had seen Dr. Adamson, who had decided not to re-order the back brace. Dr. Aranas told Plaintiff that he should submit a kite if his symptoms worsened or if he wanted to discuss a referral to a specialist. There are no subsequent kites in the record, but Plaintiff saw

Dr. Adamson again in June of 2018, and the back brace was issued. There is no evidence before the court that Plaintiff raised any other concerns regarding his back condition with Dr. Aranas.

The court cannot conclude that Dr. Aranas' response, under these circumstances, constitutes deliberate indifference to Plaintiff's health.

Therefore, summary judgment should be granted in Dr. Aranas' favor.

**D. Qualified Immunity**

The court will now address whether Dr. Adamson and Hegge are entitled to qualified immunity.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

First, as the court noted above, a fact-finder could determine that Dr. Adamson and Hegge denied/delayed Plaintiff care relative to his back. Second, it was clearly established that deliberate indifference exists when a prison official denies or delays medical treatment. *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013). Therefore, Dr. Adamson and Hegge are not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion (ECF No. 129) as to defendant Dr. Aranas, but **DENYING** it as to defendants Dr. Adamson and Hegge.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 14, 2022

*William G. Cobb*
William G. Cobb
United States Magistrate Judge